IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**DEWONNA MARIA GRAYSON**                                                    **PLAINTIFF**

**VERSUS**                                                    **CIVIL ACTION NO. 3:14cv916-RHW**

**CAROLYN W. COLVIN,**
**Acting Commissioner of**
**Social Security**                                                    **DEFENDANT**

## MEMORANDUM OPINION

Through counsel, Plaintiff Dewonna Maria Grayson filed this action November 26, 2014, seeking judicial review under 42 U.S.C. § 405(g) of the denial of Grayson's claim for Social Security disability and supplemental security income benefits.[1] Grayson asserts the ALJ failed to properly weigh the medical evidence and determine her residual functional capacity, and that the ALJ failed to properly evaluate Grayson's credibility. [10, p. 1] The case was reassigned to the undersigned for all further proceedings on the parties' consent to the exercise of jurisdiction by the United States Magistrate Judge under 28 U.S.C. § 636(c) and FED.R.CIV.P. 73. [13], [14]

Facts and Procedural History

On August 4, 2011, Grayson filed applications for Social Security disability and supplemental security income, alleging she had been disabled since July 20, 2011, at age 35. [9, pp. 93-96, 141-151] Grayson alleged disability due to obesity, depression, sleep apnea, arthritis, memory loss, arm pain and gout in her feet/ankles. [9, pp. 100-101] The applications were denied initially on December 8, 2011, and on reconsideration on January 10, 2012. [9, p. 93-96] On Grayson's request, ALJ Wallace E. Weakley conducted a hearing on her claim on July 10, 2013, attended by Grayson and her attorney, and by Vocational Expert Lynn R. Hayes.

---

[1]Grayson has been represented by counsel since at least July 3, 2012. [9, pp. 139-40]

[9, pp. 64-92]  At the time of the hearing Grayson was 37 years old, married but separated, and she and her 16-year-old twin sons were living with her mother.

Grayson testified she is 5'7" tall and weighs 430 pounds, her normal weight.  She has a valid driver's license but stated she had stopped driving two years earlier due to her sleep problem.  She has an associate degree in child development from East Central Community College, but has no other on-the-job or vocational or specialized training for any type of work.  She last worked in a daycare, but had not worked since July 21, 2011 when she was laid off from that job.  She drew unemployment until August 2012, and during that time she looked for employment but did not get hired.  Grayson testified her earlier work history consisted of unsuccessfully trying to open her own daycare and working at daycare facilities for three years in Memphis and on the Choctaw Indian Reservation.  Her present income consists of the SSI which her sons receive due to ADHD (attention deficit hyperactivity disorder).

Grayson testified she was first diagnosed with sleep apnea in February 2011 – her fiancé at the time told her she stopped breathing while she slept.  She saw Dr. Whitehead and was put on a CPAP machine, which she stated does not help.  She sees Dr. Whitehead every year, and last saw her in October 2012.  She surmised that she was previously able to work because she was not "having the sleep problems or whatever."[2]  Before the sleep apnea diagnosis, Grayson had problems with her feet swelling and burning when she was working, and her doctor told her she had gout.  She was prescribed medication, but states she still has problems standing longer than 30 minutes.[3]  She identified Dr. Watkins as her main doctor, whom she had last seen in February for stomach problems, and an MRI showed she has two hernias and diverticulitis.  Dr.

---

[2]Grayson was still working when she began seeing Dr. Whitehead in February 2011; she did not stop working until July 20, 2011.

[3]She later stated she can stand only about 20 minutes.  [9, p. 82]  She told Dr. Yates on October 11, 2011 that she was no longer having gout flare-ups with her current medication. [9, p. 234]

Watkins prescribed medication for acid reflux, but Grayson still has stomach problems, mostly at night. She testified she had seen a psychiatrist in Memphis and "been on depression for the last nine years;" she hears voices and sees shadows and is scared at night. [9, pp. 73-78]

Grayson's daily routine consists of generally getting up about noon, and she tries to go to bed at midnight; even with eleven hours of sleep, she would still need a nap during the day. She cares for her elderly mother (bathing, checking her sugar, cooking and doing laundry), but sometimes gets sleepy and has to go lie down. Grayson stated she does most everything sitting down because her feet and ankles hurt if she stands. Grayson testified she can sit for about 45 minutes at a time, and she can walk about 50-60 feet. [9, pp. 78-85] In a function report dated August 15, 2011, Grayson described her day as sleeping until noon when she forces herself to get up though she is tired and still sleepy. She tries to clean house, but with her weight, it hurts her back and she gets dizzy at times, so she sits for a while, then cleans for a while. She writes herself lists of things to do because she has memory problems. She naps from 5-7, then goes back to bed around midnight. She would "rather sleep than do anything else," is concerned about falling asleep in public, and worries she does not get enough sleep. She cooks for her mother, goes outside every day, shops regularly but requires a list to remember what is needed, and drives at times, but not a long distance because she gets sleepy. She prepares complete meals daily and it takes her 45 minutes to an hour to do so. She cleans the house every other day but it is hard, she requires help vacuuming and mopping; she does laundry every other day, but cannot do outside work. She watches television daily, and helps the children with their homework. She pays her own bills, is able to count change, handle a savings account and use a checkbook. She spends time in person and on the phone with others everyday if she can, and goes to school on a regular basis. She stated her conditions affect her ability to lift, squat, bend, stand, walk, sit, climb stairs, concentrate, remember, and use her hands which go numb a lot.

Standing a long time hurts her back, walking a lot hurts her feet, and sitting a lot hurts her butt and back depending on what she is sitting on.  She climbs stairs one step at a time.  She stated she could walk 50 feet before needing to stop and rest for five to seven minutes; she can pay attention "maybe an hour," and can follow written instructions "pretty good if [she is] interested in the topic."  She felt her former boss was mean to her, and stated stress keeps her eating and depressed a lot, but she handles changes in routine "good."  [9, pp. 166-173]

Grayson testified her doctor gives her a shot when she has a gout flare-up.  She testified her feet flare up at least three or four times a month, and they go down overnight.[4]  She sleeps with four pillows for her head and two for her feet.  She sometimes falls, "like [she has] the stumbles or something," and this usually happens when she is "waked up before [her] sleep is over."  She has never just fallen over asleep. [9, pp. 83-85]  Grayson sleeps with the CPAP every night, but has never required oxygen, and she is aware of no side effects from her medicines.  Her blood pressure is controlled with medication.  She has frequent headaches which she relates to stress and for which she takes Tylenol; she has lost a lot of hair, and she overheats at night.  [9, pp. 83-87]

Vocational Expert Lynn Hayes reviewed Grayson's work history and described her jobs for the past 15 years as a daycare worker, which is light, semi-skilled work with an SVP[5] of 4, and as a special needs daycare worker which is medium, unskilled work with an SVP of 2.  [9, p. 88]  Responding to ALJ Weakley's hypothetical assuming one with this vocational history and past relevant work, of Grayson's age, and with an associate degree in child development, who had no exertional limitations, but had non-exertional limitations due to obesity and sleep apnea which would limit walking to 50-60 feet at a time, requiring a sit-stand option, sitting for 45

---

[4]On October 11, 2011, Grayson reported she has had no flare-ups with current medication. [9, p. 234]

[5]Specific Vocational Preparation.

minutes at a time and standing 20-30 minutes at a time through an eight-hour day, and due to sleep apnea could do no work around heights, hazardous equipment or machinery, no commercial driving, no balancing or climbing ladders, ropes or scaffolds, Ms. Hayes stated Grayson could return to her past work.  In a second hypothetical, ALJ Weakley asked Hayes to assume all the foregoing and an additional non-exertional limitation to allow for Grayson to lie down for naps during the work day for up to a half hour at a time in addition to morning, afternoon and lunch breaks.  Hayes stated with this added limitation, Grayson would not be able to do her past work and that there would be no work she could do.

On August 13, 2013, ALJ Weakley issued his ten-page decision finding Grayson has not been under a disability as defined in the Social Security Act from July 20, 2011 through the date of his decision.  [9, pp. 26-35]  On October 2, 2014, the Appeals Council denied review of that decision [9, pp. 5-9], and Grayson filed the action now before the Court.

## Standard of Review

Judicial review of a final decision of the Commissioner of Social Security is limited to determining whether substantial record evidence supports the Commissioner's factual findings, and whether such findings are reached through the application of correct legal standards.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  The Court reviews the entire record to determine whether substantial evidence supports the Commissioner's decision.  *Villa*, 895 F. 2d at 1022.  Credibility of witnesses and conflicts in the evidence are issues for resolution by the Commissioner, not the Court.  It is not the Court's prerogative to substitute its judgment for that

of the Commissioner or to re-weigh the evidence. *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007); *Harris*, 209 F.3d at 417 (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988)(a finding of "no substantial evidence" is appropriate only if no credible evidentiary choices or medical findings support the decision); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). Factual findings supported by substantial record evidence are conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court may reverse a decision of the Commissioner if it is based upon faulty legal analysis, but should accept the Commissioner's legal conclusions if they are within reasonable meanings of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841-44 (1984). Absent a finding that the decision is unsupported by substantial evidence or that the Commissioner applied an incorrect legal standard, the Court must affirm the Commissioner's decision [*Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001)]; the Commissioner's decision is accorded great deference and "will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the ... decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

## Analysis

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C.A. § 423(d)(1)(A). As the one claiming disability, Grayson had the burden to prove a disability which precluded her from engaging in substantial gainful work during the pendency of her applications for benefits. *Masterson v. v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991);

*Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) ("suffering of some impairment does not establish disability; a claimant is disabled only if [she] is 'incapable of engaging in *any* substantial gainful activity'").

ALJ Weakley applied the correct law for determining disability – following the five-step sequential evaluation process set out at 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i-v). Step one requires determination of whether the claimant is engaging in substantial gainful activity, *i.e.*, work that involves significant physical or mental activities and is usually done for pay or profit. Judge Weakley found Grayson had not engaged in such activity since July 20, 2011. Step two requires determination of whether claimant has a medically determinable impairment or combination of impairments which meets the duration requirement and is severe, *i.e.*, which significantly limits her ability to perform basic work activities. ALJ Weakley found Grayson has severe impairments of morbid obesity and sleep apnea, but that her claim of disability due to depression was not severe as the objective medical evidence, including an October 2011 psychological evaluation, and records from January 2012, April 2012, August 2012 and February 2013 established no more than minimal limitation in her ability to perform basic mental work activities. In making this finding, the ALJ specifically noted the record evidence showing that Grayson had only mild limitation in activities of daily living, social functioning and concentration, persistence or pace. Although she had been prescribed medications, she had required no mental health treatment, and there is no evidence that she had experienced any episodes of decompensation. [9, pp. 28-29] These findings are based on record evidence and support a finding that Grayson has no severe medically determinable mental impairment. 20 C.F.R. 404.1520a(d)(1) and 416.920a(d)(1).

Step three requires determination of whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in

20 C.F.R. Part 404, Subpart P, Appendix 1.  Unless the impairment/combination of impairments is of such severity and meets the duration requirement, the analysis continues to step four.  Judge Weakley found Grayson's severe physical impairments of morbid obesity[6] and sleep apnea do not meet or medically equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At the fourth step of the evaluation, the ALJ must determine (1) the claimant's residual functional capacity, *i.e.*, her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments, and (2) whether she has the residual functional capacity to perform the requirements of her past relevant work.  If claimant can perform the requirements of her past relevant work, she is not disabled.  Based upon all the record evidence including the testimony of the vocational expert, and the reports of consultative examining doctors, Judge Wallace found Grayson was capable of returning to work as a daycare worker and special needs daycare worker, and was therefore not disabled under the Social Security Act.

Grayson asserts the ALJ rejected the opinions of Dr. Whitehead, her sleep doctor, without good cause.  Having reviewed the ALJ opinion and the cited medical evidence, the Court finds the record demonstrates Judge Weakley fully considered and carefully evaluated the medical evidence including Dr. Whitehead's February 1, 2011 - October 22, 2012 treatment; Grayson's emergency room records of January 20, 2012; her primary medical care records from September 2011 through February 18, 2013; as well as the findings from her October 2011 psychological evaluation by Dr. Jan Boggs, and consultative examination by Dr. Andrew Yates. [9, pp. 32-34]

---

[6]Although there are no listing criteria specific to evaluating obesity, recognizing that obesity may have an impact on limitations which may result from obesity in connection with other impairments, the ALJ expressly stated he had taken into account Grayson's obesity "even though no treating or examining medical source has specifically attributed additional or cumulative limitations to [her] obesity." [9, p. 30]

Grayson objects to the ALJ's giving Dr. Whitehead's opinion little weight finding "it is not supported by the overall medical evidence of record," as too vague to allow for meaningful review.  She contends the ALJ should have specifically weighed Dr. Whitehead's opinion according to the factors in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).  Under these sections, the Commissioner generally gives more weight to examining and treating medical sources, and gives a treating source's opinion on the nature and severity of the claimant's impairment(s) controlling weight if the Commissioner finds the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  *Id*.  When the treating source's opinion is not accorded controlling weight, the Commission considers several factors in determining the weight to give the opinion: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the existence of relevant evidence/explanation supporting the opinion; the consistency of the opinion with the record as a whole; whether the opinion is given by a specialist – specialists' opinions are generally given more weight regarding medical issues related to their specialty; and other factors which tend to support or contradict the opinion.  The Fifth Circuit has held that, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views" under the above criteria.  *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

The Court has considered not just the single statement by the ALJ regarding Dr. Whitehead's opinion, but his entire decision, and the record as a whole.  The Court finds the ALJ's order clearly shows he considered the required factors, devoting at least two full pages of his single-spaced, 10-page decision to discussing Whitehead's treatment.  There is no dispute

that Grayson first saw Whitehead on February 1, 2011 for sleep apnea problems, which had reportedly begun four months earlier. Since she did not stop working until July 21, 2011, that timeline puts Grayson working with her sleep apnea condition for some nine months. The ALJ details the findings from 11 specific treatment dates, identifying the record exhibits regarding Whitehead's treatment. [9, pp. 32-34] Judge Weakley further notes conflicts between Whitehead's evidence and other record evidence from both medical examiners and Grayson, herself. For instance, Whitehead opined on August 18, 2011 that Grayson was unable to drive a vehicle, and could not perform her job, but in a virtually contemporaneous Function Report dated August 15, 2011, Grayson stated she cared for her elderly mother, bathed her, tested her sugar, cooked her meals, shopped and did the laundry. When Dr. Yates examined her on October 11, 2011, Grayson told him she did drive, and that she was on medical leave from her daycare job. In addition, medical testing during this period proved essentially normal: a September 2011 x-ray for complaints of knee pain was within normal limits, as was an October 2011 EKG; a January 2012 CT scan of the head was unremarkable; and a May 21, 2012 MRI scan was "completely normal." [9, pp. 283, 297, 302, 294, 298-99] Finally, the ALJ points out that Grayson's primary care treatment notes from September 2011 through May 2012 do not include complaints related to sleep apnea. In fact, on May 1, 2012 she reportedly was "doing good with CPAP," and requested a release to return to work. [9, pp. 33, 276-284] The Court finds substantial record evidence supports the ALJ's resolution of these conflicts in the evidence, and finding that Dr. Whitehead's opinions are inconsistent with the record as a whole.

Grayson objects to Judge Weakley's finding that her allegations of disability were not entirely credible. It is for the ALJ to determine credibility of both lay and expert witnesses. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). In addition to being able to observe Grayson, the ALJ fully and fairly evaluated her hearing testimony and evidence regarding her

daily activities in caring for her mother, cooking, cleaning, shopping and doing laundry, and his particularly finding inconsistency between Grayson's subjective complaints of disability and her actively seeking employment during the time she alleges she was disabled.  The ALJ also noted inconsistency in the complaints Grayson made to different medical providers.  The Court finds substantial record evidence supports the ALJ's finding on this issue.

The record before the Court demonstrates the ALJ carefully reviewed and considered all the evidence of Grayson's claimed impairments.  Following the prescribed analysis, he identified the evidence upon which he relied and adequately explained the weight he assigned to the evidence.  The Court finds upon review of the record in its entirety, that Grayson has failed to demonstrate error in the ALJ's decision.  Based upon consideration of the record of proceedings below and controlling law, the undersigned is of the opinion that the Commissioner's final decision is supported by substantial evidence and in accord with relevant legal standards.  The decision of the Commissioner is therefore affirmed.

SO ORDERED, this the 2nd day of March, 2016.

/s/ *Robert H. Walker*
    ROBERT H. WALKER
    UNITED STATES MAGISTRATE JUDGE